## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

CORLETTA ROSIE WATKINS, individually
and on behalf of all others similarly situated,

                Plaintiffs,

v.                                      CIVIL  ACTION  NO.  3:10-1004

WELLS FARGO BANK d/b/a
WELLS FARGO HOME MORTGAGE,

                Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant's Motion to Dismiss (Doc. 7) and Motion to Dismiss

Amended Complaint or in the Alternative Motion for Judgment on the Pleadings (Doc. 12).  Also

pending is Defendant's Motion to Consolidate (Doc. 5).  In light of this Court's Order of October

26, 2010, in 3:08-cv-0132 resolving that case (Doc. 110, *Watkins I*), the motion to consolidate is

**DENIED as moot**.  Defendant's first motion to dismiss (Doc. 7) is also **DENIED as moot**, as

subsequent to its filing Plaintiff filed an amended complaint.  For the following reasons, Defendant's

motion to dismiss the amended complaint (Doc. 12) is **GRANTED in part** and **DENIED in part**.

### I.  BACKGROUND

This action originates in a previous action between the two parties.  In order to understand

the grounds for Plaintiff's current claims, it is helpful to review the settlement process of the

previous action.

A.     **History of *Watkins I***[1]

The original lawsuit between the parties, *Watkins v. Wells Fargo Home Mortgage* ("*Watkins I*"), 3:08-0132, concerned Defendant Wells Fargo's mortgage lending practices. Plaintiff Corletta Rosie Watkins refinanced her home through Defendant in September 2003. The loan was in the form of an "adjustable rate mortgage" that allowed for fluctuations in the interest rate over the course of the loan. As the interest rate rose, Plaintiff's payments likewise rose. Ultimately, she defaulted on the loan. The case, filed on December 6, 2007, was settled in a mediation conference with Magistrate Judge Mary E. Stanley, on February 2, 2010. *Settlement Agreement*, Doc. 7-1. Pursuant to the settlement agreement, Defendant agreed to pay $25,000 for a quitclaim deed on Plaintiff's home, $15,000 to resolve servicing claims, and reasonable attorneys' fees. *Id.* ¶ 1. Such payments were made in exchange for Plaintiff's agreement not to contest the foreclosure of her home, to vacate her home within 90 days of the execution of the settlement agreement, and to dismiss her claims against Wells Fargo with prejudice. *Id.* ¶¶ 2–4. The parties could not reach a consensus on attorneys' fees, and submitted the issue to this Court, which issued an order in June of 2010. *Mem. Op. & Order*, *Watkins I*, Doc. 98.

This, however, did not resolve the dispute between the parties. In August of 2010, both parties filed motions to enforce the settlement. *Watkins I*, Docs. 100 & 102. Defendant filed the first motion in response to Plaintiff filing *Watkins II* in Lincoln County Circuit Court. *Def.'s Mot. to Enforce Settlement Agreement*, *Watkins I*, Doc. 100. Plaintiff responded to the motion, and filed her own motion to enforce settlement. *Pl.'s Mot. to Enforce Settlement*, *Watkins I*, Doc. 102. In that

---

[1] The first action between the parties will be referred to as *Watkins I* throughout this Opinion. The current action will be referred to as *Watkins II*. All documents from the *Watkins I* docket will be labeled as such.

motion, Plaintiff alleged the same violations of the settlement agreement that underlie her breach of contract claim in *Watkins II*. *See Pl.'s Mem. of Law in Supp. of Mot. to Enforce Settlement*, *Watkins I*, Doc. 103. Defendant responded, providing substantively the same factual defenses as it has in this action. *See Def.'s Mot.*, *Watkins I*, Doc. 100; *Def.'s Reply*, *Watkins I*, Doc. 104. The Court held a hearing on the motions on October 26, 2010, and issued an order granting the plaintiff's motion. *Order*, *Watkins I*, Doc. 110. The Court concurrently issued an order in this action, requesting additional briefing on the pending motion to dismiss in light of the resolution of *Watkins I*. *Order*, Doc. 17. It is partly from the delay in resolving the settlement agreement in *Watkins I* that this current action stems.

**B.**     **Factual and Procedural History of *Watkins II***

This case was filed on June 28, 2010, in the Lincoln County Circuit Court. Doc. 1-1. Defendant Wells Fargo subsequently removed the action to the Southern District of West Virginia on the basis of diversity jurisdiction. *Notice of Removal*, Doc. 1. The defendant moved to change venue from the Charleston to the Huntington Division; the motion was granted on October 26, 2010. *Order*, Doc. 16.

Plaintiff alleges two counts against the defendant in her Amended Complaint. First, Plaintiff alleges a breach of contract resulting from Defendant's failure to timely provide the settlement funds. *Am. Compl.* ¶ 8, Doc. 10. Second, Plaintiff asserts that the defendant engaged in illegal debt collection in violation of West Virginia Code § 46A-2-128(e) of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 *et seq.* ("WVCCPA"). *Id.* ¶ 19. Plaintiff alleged that the defendant, knowing Plaintiff is represented by counsel, communicated directly with her through collection letters beginning on February 18, 2010, even though the loan in question was voided

-3-

pursuant to the February 2, 2010 settlement agreement. *Id.* ¶¶ 12, 20.  Plaintiff expressly abandoned

this claim in her supplemental briefing, and now asserts that Defendant violated § 46A-2-127(d) as

Defendant communicated to Plaintiff that she still owed money on the loan settled in *Watkins I*.

Defendant moves to have Plaintiff's Amended Complaint dismissed for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c).  *Def.'s Mot. to Dismiss Am. Compl.*,

Doc. 12.

## II.  LEGAL STANDARD

### A.  <u>Standard for a 12(b)(6) Motion to Dismiss</u>

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court

disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was

long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563.  In its place, courts

must now look for "plausibility" in the complaint.  This standard requires a plaintiff to set forth the

"grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation

marks and citations omitted).  Accepting the factual allegations in the complaint as true (even when

doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ."

*Id.* (citations omitted).  If the allegations in the complaint, assuming their truth, do "not raise a claim

of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum

expenditure of time and money by the parties and the court."  *Id.* at 558 (internal quotation marks

and citations omitted).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 129 S. Ct. at 1949 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id.* at 1950. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting, in part, *Fed. R. Civ. P.* 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

**B.**     **Standard for a 12(c) Motion for Judgment on the Pleadings**

Rule 12(h)(2) allows for a defense of failure to state a claim to be raised in a 12(c) motion for judgment on the pleadings. *Fed. R. Civ. P.* 12(h)(2); *see, e.g.*, *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A motion for judgment on the pleadings may be filed after the pleadings are closed. *Fed. R. Civ. P.* 12(c); 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1367 (3d ed.). The pleadings are closed when a complaint, an answer to the complaint, any counterclaims and answers, third-party complaints and answers, and any reply to an answer if ordered by the court, are filed. *Fed. R. Civ. P.* 7(a); *Fed. Prac. & Proc.* § 1367. Defendant Wells Fargo has not filed an answer in this case. Its first action was to remove the case to federal court, and then to move to dismiss the complaint. Plaintiff filed an amended complaint on August 23, 2010, and again Defendant only filed a motion to dismiss. Therefore, the pleadings have not closed, and a judgment on the pleadings cannot move forward. *Fed. R. Civ. P.* 7(a); *Fed. Prac. & Proc.* § 1367. Accordingly, Defendant's motion will be treated as a 12(b)(6) motion to dismiss.

**C.**     **External Evidence That May Be Considered in a 12(b)(6) Motion to Dismiss**

As a preliminary matter, this Court recognizes the general rule that external evidence ought not be considered in a 12(b)(6) motion to dismiss. *Fed. R. Civ. P.* 12(d). There is, however, an exception to this rule providing that "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)) (other citations omitted). Here, Plaintiff

explicitly cited the written settlement agreement in the prior case between the parties, and it is the contract she claims has been breached by the defendant. *See, e.g.*, *Am. Compl.* ¶¶ 6, 15. Accordingly, the Court can consider this document in its analysis of the motion to dismiss without converting the motion to a motion for summary judgment.

In addition, a court may take judicial notice of its own records. *See, e.g.*, *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (finding that a district court "should properly take judicial notice of its own records" at the motion to dismiss stage); *see also Fed. R. Evid.* 201(c). Further, both the Supreme Court of the United States and the Fourth Circuit have found that courts may take judicial notice of items or matters in the public record, even at the 12(b)(6) stage of a proceeding. *See Papasan v. Allain*, 478 U.S. 265, 269 n.1 (1986); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Defendant has requested this Court take judicial notice of Plaintiff's Motion to Enforce Agreement and accompanying exhibits in *Watkins I*. The Court does so and, acting on its own accord, takes judicial notice of the entire docket of *Watkins I* insofar as it provides relevant insight pertaining to the grounds for Plaintiff's claims. Defendant has also submitted the quit claim deed as an exhibit to its supplemental reply. Unlike the other documents, the quit claim deed was neither submitted as an exhibit in *Watkins I* nor did Plaintiff rely on it in her Amended Complaint. Accordingly, the Court did not consider the deed in its consideration of the 12(b)(6) motion. *Fed. R. Civ. P.* 12(d). Plaintiff likewise has included a number of attachments to her supplemental briefing. Specifically, she has attached (1) Testimony by Julie L. Williams, Office of the Comptroller of the Currency; (2) OCC Advisory Letter Re: Questions Concerning Applicability and Enforcement of State Laws; Contacts From State Officials; and (3) OCC Advisory Letter Re:

Guidance on Unfair or Deceptive Acts or Practices.  These documents have all been considered by the Court as they are readily available in the public record.  *See, e.g.*, *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)).

### III.  DISCUSSION

Defendant's motion seeks to have both counts in Plaintiff's Amended Complaint dismissed. As to Count I, Defendant contends that Plaintiff has failed to plead sufficient facts to establish all the elements of a breach of contract claim.  As to Count II, Defendant offers several arguments as to why the claim for illegal debt collection should be dismissed, including:  (1) failure to assert a claim under the relevant state law provisions in the amended complaint; (2) failure to sufficiently plead required facts; (3) preemption under the National Banking Act and regulations promulgated thereunder; and (4) a lack of a creditor relationship between the parties.  As to both claims, Defendant also asserts that Plaintiff is judicially estopped from pursuing them as she has failed to disclose the pending action in her bankruptcy proceeding.  The Court will address each of these arguments in turn.

### A.    Breach of Contract Claim

In West Virginia, to establish a breach of contract claim a plaintiff "must allege the following elements:  the existence of a valid, enforceable contract, that the plaintiff has performed under the contract, that the defendant has breached or violated its duties or obligations under the contract, and that the plaintiff has been injured as a result."  *See Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 730 (S.D. W. Va. 2009) (citing *Williston on Contracts* § 63-1 (Richard A. Lord, ed. 4th ed. West 2009); *Harper v. Consol. Bus Lines*, 185 S.E. 225, 225–26 (W. Va. 1936)); *Charleston Nat'l Bank of Charleston v. Sims*, 70 S.E.2d 809, 813 (W. Va. 1952); *White*

*v. Romans*, 3 S.E. 14, 16 (W. Va. 1887)).  Both parties concede there is a valid, enforceable contract in the settlement agreement.  *Settlement Agreement*, Doc. 7-1.  Plaintiff has fully performed under the contract at this time, as has the defendant.[2]  Therefore, Plaintiff has based her breach of contract claim on the theory that Defendant's delay in disbursing the funds violated its duty of good faith and fair dealing, resulting in harm to Plaintiff.

### 1.  Factual Background of the Breach of Contract Claim

Under the settlement agreement in *Watkins I*, each party had certain obligations they had to perform.  Plaintiff was required to provide a quitclaim deed to her house to the defendant, and agree not to contest the foreclosure on her house initiated by Defendant.  *Settlement Agreement* ¶ 1, Doc. 7-1.  In addition, Plaintiff agreed to vacate her property within ninety days following the provision of the settlement funds by Defendant and the execution of the settlement agreement.  *Id.* ¶ 2.  In return, Defendant promised to provide $25,000 in return for the deed and $15,000 to satisfy the servicing claims.  *Id.* ¶ 1.  Both parties also agreed that the settlement agreement would be executed with mutual releases and would include attorneys' fees, if agreed upon.  *Id.* ¶ 3.

On or about April 16, 2010, Plaintiff Watkins contacted the defendant requesting that Defendant disburse the settlement funds.  *Ex. B to Pl.'s Mot. to Enforce Settlement*, *Watkins I*, Doc. 102-1.  This request was time sensitive as she qualified for a federal home buyers credit only if she entered into a contract to purchase a home by April 30, 2010.  *Am. Compl.*, ¶¶ 9–10, Doc. 10.  However, at the time of her request, several performance obligations under the settlement agreement

---

[2] On October 26, 2010, this Court entered an Order in *Watkins I*, requiring the execution of a formal settlement agreement and release within three days of the Order, and to have the settlement amount and attorneys' fees disbursed to the plaintiff within the same time frame.  *Order*, *Watkins I*, Doc. 100.  Pursuant to this Order, at this stage both parties have fully performed under the settlement agreement.

were still outstanding, and Defendant therefore ultimately refused to provide the funds at that time. Plaintiff had not yet provided a W-9, a signed release had not been drafted or signed by either party, and a quit claim deed had not been provided to the defendant. *Def.'s Mem. in Opp'n* 3–4, *Watkins I*, Doc. 105. Defendant responded to Plaintiff's request for the funds, informing Plaintiff that a signed release was still required. *Ex. C to Pl.'s Mot. to Enforce Settlement*, *Watkins I*, Doc. 102-1.

Defendant further objected to providing the settlement funds as Plaintiff had filed the current action, *Watkins II*. *Id.* at 4. The settlement agreement in *Watkins I* called for the dismissal of the servicing claims, with prejudice, and the execution of a signed mutual release of claims. *Settlement Agreement* ¶¶ 3, 4, Doc. 7-1. According to Defendant, the release was to include all servicing claims arising out of the loan—including those asserted by Plaintiff in *Watkins II*—and therefore Defendant would not disburse the funds. *Def.'s Mem. in Opp'n* 4, *Watkins I*, Doc. 105. Plaintiff provided a W-9 and a signed release was provided to the defendant in June 22, 2010, though the latter did not include the *Watkins II* servicing claims. *Ex. G to Pl.'s Mot. to Enforce Settlement*, *Watkins I*, Doc. 102-1. The quit claim deed, however, was not provided at that time, and still had yet to be delivered at the time Defendant filed its motion to enforce the settlement agreement in August 2010. *Def.'s Reply* 2, *Watkins I*, Doc. 103. Defendant had the checks ready for disbursement, but withheld final performance in light of its view of Plaintiff's non-performance under the settlement agreement. *Def.'s Mot. to Enforce Settlement Agreement* 3, *Watkins I*, Doc. 100. Both parties have now fully completed performance under the settlement agreement. *Order*, *Watkins I*, Doc. 110.

### 2.  Plaintiff Has Not Established a Plausible Breach of Contract Claim

According to the *Restatement (Second) of Contracts*, each party has a duty of good faith and fair dealing in the performance and enforcement of a contract. Restatement (Second) of Contracts

-10-

§ 205.  West Virginia has recognized an implied covenant of good faith and fair dealing in all contracts.  *See Knapp v. Am. Gen. Fin. Inc.*, 111 F. Supp. 2d 758, 767 (S.D. W. Va. 2000) (quoting *Harless v. First Nat'l Bank in Fairmont*, 246 S.E.2d 720, 274 (W. Va. 1978)).  The *Restatement* defines "[g]ood faith performance . . . of a contract [as] emphas[izing] faithfulness to an agreed common purpose and consistency with the justified expectations of the other party."  Restatement (Second) of Contracts § 205 cmt. a.  The duty, however, cannot "be used to add additional terms into the contract."  *LaPosta Oldsmobile, Inc. v. Gen. Motors Corp.*, 426 F. Supp. 2d 346, 355 (N.D. W. Va. 2006).  "Questions of good-faith performance thus necessarily are related to the application of terms of the contractual agreement."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 217 n.11 (1985).

Defendant makes two main arguments.  First, Defendant asserts that the contract provides for no specific deadlines as to the disbursement of the settlement proceeds.  Therefore, Defendant argues, there are no express contractual provisions that provide a basis for Plaintiff's good faith argument.  Second, insofar as the damages Plaintiff seeks stem from her inability to take advantage of the tax credit in purchasing a home, Defendant points out that Plaintiff's performance under the settlement agreement was not complete at that time either.  The signed release was not provided until June 2010, and Plaintiff had yet to provide the quit claim deed in August 2010.  Accordingly, Defendant argues it could not be expected to fully perform when Plaintiff also had outstanding obligations under the contract.

Plaintiff disagrees, stating that an eight month delay in disbursing the settlement funds violates Defendant's duty of good faith and fair dealing.[3]  In the alternative, Plaintiff argues that to

---

[3] Plaintiff cites only one legal authority supporting her claim that an eighth month delay in performance constitutes a failure to perform contractual duties, and it is distinguishable from this
(continued...)

survive Defendant's motion to dismiss she must only plead sufficient facts that "'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). If the Court was unable to consider the settlement agreement and the history of *Watkins I* while deciding Defendant's motion, it would agree with the Plaintiff. On the face of her complaint she has plead sufficient facts to give rise to a facially plausible breach of contract claim. However, the settlement agreement and the briefing submitted with the motions to enforce the settlement agreement in *Watkins I* contradict Plaintiff's assertions.

While the Court agrees that at some point, a refusal to tender the settlement funds would violate the duty of good faith and fair dealing, the settlement agreement contains clear language that supports Defendant's claim that it did not violate its duty of good faith and fair dealing when it refused to provide the funds. The February 2010 agreement in *Watkins I* was not a final settlement, but rather an agreement to make a further, final agreement, pending performance of certain obligations by both parties. Under Paragraph 3 of the agreement, the parties agreed that the settlement agreement would be "signed with mutual releases." *Settlement Agreement*, Doc. 7-1. Plaintiff's obligation to vacate her house was tied to the provision of the settlement funds *and* the execution of the settlement agreement. *Id.* ¶ 2. On these two paragraphs alone it was reasonable for Defendant to delay the provision of the settlement proceeds until the parties signed the mutual release and executed a final agreement. As established in the briefing submitted for the parties'

---

[3](...continued)

case. In *Frank R. Ford Co., Inc. v. Eastern Smelting & Refining Corp.*, 678 F.2d 483 (4th Cir. 1982), the court's conclusion that a three month delay arose to a failure to perform contractual duties was specific to the context of the business transaction for processing and delivering bars of silver at issue in the case. *Frank R. Ford*, 678 F.2d at 484. The Court finds that the time delay established in that case does not apply to the contract at issue in this action.

motions to enforce the settlement, neither party had fully performed by April 30, 2010—the date the federal tax credit expired.[4]  *See, e.g.*, *Def.'s Reply* 2–3, *Watkins I*, Doc. 104 (asserting a signed release had not been submitted until June 22, 2010 and that Plaintiff had yet to provide a quitclaim deed).  Accordingly, Defendant's refusal to disburse the settlement funds at that time was reasonable in light of the incomplete performance under the settlement agreement.

Plaintiff argues that Defendant only provided a formal settlement agreement after this Court issued its ruling regarding attorneys' fees.  However, there is no provision in the handwritten settlement agreement requiring Wells Fargo to make the first overture towards finalizing the agreement.  If the disbursement of the fees was time sensitive for Plaintiff, she had the option to initiate performance under the contract, which she did not.  On the contrary, she failed to even notify Defendant of the April 30th deadline until two weeks prior.  Plaintiff attempts an additional argument, that "the question of the order of performance is a factual one" and, therefore, the Court should allow discovery to move forward to allow Plaintiff to obtain possible evidence of Defendant's past settlement agreements.  *Pl.'s Supplemental Mem. of Law* 7, Doc. 22.  The Court disagrees.  A breach of the duty of good faith and fair dealing must be tied to the terms of the

---

[4] The Court also finds questionable the plausibility of the facts put forth to support Plaintiff's claim for damages, the fourth element of a breach of contract claim.  The only fact she has plead is the lost opportunity to take advantage of the federal tax credit.  On the face of the contract there was no obligation for Defendant to disburse the settlement funds by April 30, 2010.  Plaintiff has provided no other factual allegation for damages resulting from Defendant's alleged breach of contract.  The parties have now both fully performed under the settlement agreement.  Plaintiff argues that because the extent of damages is a factual question, this Court should refrain from dismissing Count I as she has alleged sufficient facts to demonstrate she has suffered damages.  Plaintiff says she still may demonstrate other damages from the alleged breach from information gained through discovery.  The Court has doubts about the plausibility of Plaintiff's damages claim, but because it finds she has failed to establish that Defendant breached the contract, it does not reach a decision on the sufficiency of the pleading of this element.

-13-

contract, and cannot be used to add new terms to the contract. *LaPosta*, 426 F. Supp. 2d at 355; *Allis-Chalmers*, 471 U.S. at 217 n.11. As already discussed above, the plaintiff cannot assert this claim on the basis of any terms of the contract, and therefore she cannot persuade the Court to refrain from ruling on the merits of Count I until discovery is completed.

In sum, Defendant's delay in disbursing the settlement funds did not rise to a violation of the duty of good faith and fair dealing. Defendant's reasons for its delay in finalizing performance under the agreement were not unreasonable, and well within the "agreed common purpose and consisten[t] with the justified expectations of the other party." Restatement (Second) of Contracts § 205 cmt. a. The fact that this Court granted the plaintiff's motion to enforce the settlement does not turn Defendant's actions into a violation of the duty of good faith and fair dealing. Accordingly, Plaintiff has failed to provide sufficient facts to plausibly establish that Defendant breached the settlement agreement. For the foregoing reasons, Count I of Plaintiff's Amended Complaint is hereby **DISMISSED with prejudice**.

## B.     Illegal Debt Collection Claim

Defendant moves to have Count 2 of the Complaint dismissed on three different theories. First, Defendant argues Plaintiff has failed to allege a claim under the WVCCPA and Count II should therefore be dismissed. Defendant puts forth several arguments on this ground, including (1) Plaintiff failed to cite W. Va. Code § 46A-2-127(d) in her Amended Complaint, and she is therefore precluded from bringing a claim under this provision; (2) Wells Fargo is no longer a creditor of Plaintiff, and it can no longer be subject to claims brought under the WVCCPA private cause of action in § 46A-5-101; (3) the loan in question does not meet the definition for claim provided in WVCCPA; and (4) Plaintiff did not specifically allege the communications in question

-14-

were collection letters.  Second, Defendant asserts that West Virginia Code § 46A-2-127(d) is preempted by the National Bank Act and the regulations promulgated by the Office of the Comptroller of the Currency.

### 1.  Plaintiff Alleges Sufficient Facts to State a Claim Under the WVCCPA

#### i.  *Plaintiff Does Not Need to Cite the Specific Provision in Her Complaint*

In her Amended Complaint, Plaintiff alleged that Defendant "communicated directly with the Plaintiff in an effort to collect a debt" while knowing she was represented by counsel in violation of W. Va. Code § 46A-2-128(e).  *Am. Compl.* ¶ 19, Doc. 10.  Specifically, she asserted that Defendant sent collection letters from February 18, 2010 through present "seeking payments on the loan that was voided" in *Watkins I.  Id.* ¶ 20.  However, Plaintiff expressly abandoned her claim under this provision in her supplemental response to Defendant's motion to dismiss.  *Pl.'s Supplemental Resp.* 9, Doc. 22.

In that brief, Plaintiff, for the first time, alleges a claim under a separate provision of the West Virginia Consumer Credit and Protection Act—§ 46A-2-127(d).  To support a claim under this provision, Plaintiff cites paragraphs 12 and 20 of her Amended Complaint, which state that Defendant communicated with Plaintiff in an attempt to collect "on the loan that was voided as part of the parties' settlement agreement on February 2, 2010."  *Am. Compl.* ¶¶ 12, 20, Doc. 10.  Defendant vigorously argues that Plaintiff's failure to cite the provision in her Amended Complaint is sufficient grounds for its motion to dismiss to be granted.  The Court disagrees.  This is not a claim that has to be pled with a level of particularity, and the plaintiff does not need to cite the provision in order to satisfy the 12(b)(6) standard.  Under Federal Rule of Civil Procedure 8(e), "[p]leadings must be construed so as to do justice."  Rule 8(a)(2) requires "a short and plain

-15-

statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P.* 8(a)(2).  The

12(b)(6) standard requires the complaint to include enough facts "'state a claim to relief that is

plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

The question the Court must answer in assessing the motion to dismiss Count II is whether

the facts, as alleged in the Amended Complaint, are sufficient to make it plausible that Plaintiff

could prove a claim for relief under § 46A-2-127(d).  Section 46A-2-127(d) provides:

> No debt collector shall use any fraudulent, deceptive or misleading representation or
> means to collect or attempt to collect claims or to obtain information concerning
> consumers. . . . [T]he following conduct is deemed to violate this section: . . . (d)
> Any false representation or implication of the character, extent or amount of a claim
> against a consumer, or of its status in any legal proceeding.

If Defendant sent collection letters to Plaintiff subsequent to the February 2, 2010 settlement

agreement seeking to collect on the loan released under that agreement, then Defendant arguably

gave a "false representation or implication of the character . . . or amount of a claim" to Plaintiff.

W. Va. Code § 46A-2-127(d).  Insofar as Defendant's motion to dismiss Count II is based on this

argument, it fails.

### ii.     *Plaintiff's Claim is Based on a Creditor Relationship Between the Parties*

The success of Plaintiff's claim under § 46A-2-127(d) is dependent on her ability to assert

it under the private cause of action found in the WVCCPA under § 46A-5-101(1).  That provision

provides that "[i]f a creditor has violated the provisions of this chapter applying to . . . any

prohibited debt collection practice . . . the consumer has a cause of action to recover actual damages

. . . ." W. Va. Code § 46A-5-101(1).  The WVCCPA does not define the term creditor, but it does

define "credit" as "the privilege granted by a creditor to a debtor to defer payment of debt or to incur

debt and defer its payment." W. Va. Code § 46A-1-102(17).  A creditor, therefore, is someone who extends credit, as defined under the WVCCPA, to a consumer.

Defendant asserts that it is no longer a creditor of Plaintiff as the loan in question was voided in the settlement agreement.  Accordingly, Defendant argues, it cannot be subject to a suit brought under § 46A-5-101(1).  In a literal interpretation of the statutory language, Defendant's argument might hold true.  However, the West Virginia Supreme Court of Appeals has found that the WVCCPA is to be construed broadly so as to protect "consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d 516, 523 (W. Va. 1995) (citations omitted).  Defendant's alleged misrepresentation regarding the voided loan arose out of a previously existing creditor relationship.[5] In fact, Defendant acted as a creditor when it sent collection letters to Plaintiff.  As Plaintiff's claim arises out this relationship, it would be an unjust result for Defendant to escape liability merely because Plaintiff was successful in getting the loan voided in *Watkins I.*  To refuse Plaintiff the avenue of relief provided under § 46A-5-101(1) would run contrary to the purpose of the WVCCPA. The Court therefore finds Plaintiff has satisfied the requirements under § 46A-5-101(1).

---

[5] Defendant cites *Grubb v. Jos A. Bank Clothiers, Inc.*, 2005 WL 1378721 (S.D. W. Va. 2005) for the principle that actions under § 46A-5-101(1) are limited to instances where creditors extended credit to a consumer.  In *Grubb*, however, the relationship was between a retailer and a consumer, and there was no allegation regarding an extension of credit. *Grubb*, 2005 WL 1378721, *3.  In contrast, Plaintiff has alleged there was an extension of credit by Defendant.  The fact that the loan in question is voided does not alter this initial relationship between the parties.

### iii.    *The Loan Was For Personal Purposes*

Defendant's next argument was made in reference to Plaintiff's claim under § 46A-2-128(e), which Plaintiff has since abandoned, but in an abundance of caution, the Court addresses the argument with regard to § 46A-2-127(d).  Defendant bases its argument on the statutory language of § 46A-2-127, which requires the alleged misrepresentation by the creditor to occur in an effort to "collect claims."  W. Va. Code § 46A-2-127.  Claim is defined under the WVCCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money . . . which is the subject of the transaction is primarily for personal, family or household purposes . . . ."  W. Va. Code § 46A-2-122(b).  Defendant contends that the loan was not related to one of these enumerated purposes.  Plaintiff is in bankruptcy.  All Plaintiff's money and claims are assets of the bankruptcy estate and, thus, cannot be used for a personal purpose.   The Court disagrees.  At the time the transaction was first entered into by the parties in 2003, the loan was for personal purposes and Plaintiff was not in bankruptcy.  Further, as already discussed, the WVCCPA should be construed liberally so as to protect consumers.  *See Scott Runyan Pontiac-Buick*, 461 S.E.2d at 523.  To deprive Plaintiff of a cause of action because what was a loan to be used for personal purposes is now part of a bankruptcy estate runs contrary to the purpose of the WVCCPA. For these reasons, this argument fails to persuade the Court.

### iv.    *Plaintiff Did Not Have to Specifically Allege the Communications Were Collection Letters*

Defendant asserts another statutory language-based argument.  This argument is based on Plaintiff's failure to specifically allege that the communications from Defendant were demanding money.  Instead, she pleads that the communications were "seeking payment."  Citing *Owen F. Silvious v. AFNI, Inc.*, Defendant contends that collection letters demand money; they do not seek.

2009 U.S. Dist. LEXIS 66964 (N.D. W. Va. June 29, 2009) (James E. Seibert, MJ, Magistrate Report & Recommendation), *aff'd Silvious v. Midland Credit Mgmt., Inc.*, 2009 U.S. Dist. LEXIS 66962, 11–12 (N.D. W. Va. Aug. 3, 2009) (Frederick P. Stamp, Jr., J.).   Therefore, Defendant argues, Plaintiff has not sufficiently plead that Defendant was collecting or attempting to "collect claims."  W. Va. Code § 46A-2-127(d).  The Court rejects this argument as well.  To dismiss this claim because Plaintiff chose to use the word "seeking" rather than "demanding" in drafting her Amended Complaint would run contrary to the Federal Rule of Civil Procedure 8(e) that provides that "[p]leadings must be construed so as to do justice."  As discussed above, Plaintiff has alleged sufficient facts to make a claim under § 46A-2-127(d) plausible on its face.  This includes sufficient facts to support the contention that the communications from Defendant demanded money, thereby satisfying the requirements under § 46A-2-127(d).  Insofar as Defendant's motion to dismiss Count II is based on this argument, it fails.

### 2.    Plaintiff's Claim Under § 46A-2-127(d) is Not Preempted

"The Supremacy Clause of the Constitution renders federal law 'the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007) (quoting U.S. Const. Art. VI, c. 2). "As a result, federal statutes and regulations properly enacted and promulgated can nullify conflicting state or local actions." *Id.* (quoting *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 595 (4th Cir. 2005)).   "Federal law may preempt state law under the Supremacy clause in three ways—by 'express preemption,' by 'field preemption,' or by 'conflict preemption.'" *Id.* (citing *Pinney v. Nokia, Inc.*, 402 F.3d 430, 453 (4th Cir. 2005)). "[E]xpress preemption takes place when 'Congress expressly declares its intent to preempt state law.'" *Id.* at 191, n.10 (quoting *Pinney*, 402

F.3d at 453).  "[F]ield preemption occurs when Congress 'occupies the field' by regulating so pervasively that there is no room left for the states to supplement federal law."  *Id.* at 191, n.10 (quoting *Cox v. Shalala*, 112 F.3d 151, 154 (4th Cir. 1997)).  Conflict preemption "occurs when a state law actually conflicts with federal law."  *Id.* at 191.

Defendant argues that Plaintiff's claim under § 46A-2-127(d) is preempted by the National Bank Act ("NBA"), 12 U.S.C. § 1 *et seq.*, and the regulations promulgated by the Office of Comptroller of the Currency ("OCC"), which govern the business activities of national banks.[6] *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6 (2007).  Pursuant to the NBA, banks are vested with "enumerated powers and 'all such incidental powers as shall be necessary to carry on the business of banking.'" *Id.* at 11 (quoting 12 U.S.C. § 24 (Seventh)).  The Act also provides that "[n]o national bank shall be subject to any visitorial powers except as authorized by Federal law . . . ." *Id.* (quoting 12 U.S.C. § 484(a)).  As interpreted by the Supreme Court of the United States, "federal control shields national banking from unduly burdensome and duplicative state regulation."  *Watters*, 550 U.S. at 11 (citations omitted).

The NBA also subjects national banks' real estate lending to "such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order."  12 U.S.C. § 371(a).  These regulations are entitled to "no less preemptive effect than federal statutes." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).  The OCC regulation of particular import to this case is found at 12 C.F.R. § 34.4.  Subsection (a) provides that:

_____

[6] The preemption protections also apply to operating subsidiaries of national banks.  *See Watters*, 550 U.S. at 16, 21.  Wells Fargo Home Mortgage is an operating subsidiary of Wells Fargo Bank, N.A.

> Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks.

The OCC further elucidates the scope of its preemption regulation by listing examples of state law areas that are not applicable to a national bank's real estate lending practices.  Of relevance to this case are the following:

> (4) The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents;

> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

Section 34.4, however, does not preempt the applicability of all state laws.  Subsection (b) preserves areas of state law that "are not inconsistent with the real estate lending powers of national banks and [these] apply to national banks to the extent that they only *incidentally* affect the exercise of national banks' real estate lending powers."  12 C.F.R. § 34.4(b) (emphasis added).  Like subsection (a), subsection (b) lists specific areas of law; of relevance here is the inclusion of contract law.  12 C.F.R. § 34.4(b)(1).  Therefore, in determining whether a state law claim is preempted under the NBA and the OCC regulations, a court must determine whether the claim addresses those areas expressly preempted under subsection (a) or whether the claim is more akin to a traditional state common law area preserved under subsection (b).

This Court has addressed preemption under the NBA and the OCC regulations before; in fact, it addressed it in *Watkins I*.  In its analysis, the Court reviewed the case *In re Ocwen Loan*

-21-

*Servicing, LLC Mortgage Servicing Litigation*, 491 F.3d 638 (7th Cir. 2007), which analyzed

preemption under the Home Owner's Loan Act ("HOLA") and its regulations.[7]  *Watkins v. Wells*

*Fargo Home Mortg.*, 631 F. Supp. 2d 776, 781–82 (S.D. W. Va. 2008).  The Seventh Circuit in

*Ocwen* described the preemption inquiry as "decid[ing] . . . which claims fall on the regulatory side

of the ledger and which, for want of a better term, fall on the common law side."  *Ocwen*, 491 F.3d

at 644.  Finding the HOLA preemption analysis analogous to the preemption concerns under the

NBA, this Court concluded:

> "[w]hatever the claim, a court must look at the underlying allegations proffered in
> support of the claim and ask on which side of the *Ocwen* court's ledger they fall.  If
> the plaintiff truly complains of a term or practice outside the purview of the federal
> regulations, there is no preemption.   However, conflicting state regulation
> masquerading as a common law contract claim cannot be allowed to supplant
> existing federal regulations."

*Watkins*, 631 F. Supp. 2d at 782–83; *see also Frye v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS

83969, *17 (N.D. W. Va. 2010) (describing the preemption analysis as determining whether a claim

matches the examples in § 34.4(a) and, if not, whether it is a state claim that only incidentally effects

lending).

Defendant contends that Plaintiff's claim under § 46A-2-127(d) "seeks to restrict the content

of the national bank's communications, as well as its payment procedures during default and loss

mitigation" which implicates Defendant's "processing, participation in, and servicing of its

---

[7] This Court and others have found the preemption analysis utilized in HOLA cases to be
helpful in guiding a court's preemption analysis under the NBA.  *See, e.g.*, *Watkins*, 631 F. Supp.
2d 776; *Frye v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 83969, at *15 (N.D. W. Va. 2010).  It is
noted, however, that preemption under HOLA is "more sweeping [than that under the  NBA and
OCC regulations] because 'OTS occupies the entire field of lending regulation for federal savings
associations' in connection with HOLA."  *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073,
1083–84 (C.D. Cal. 2009).

mortgages, as well as the terms of credit and disclosures." *Def.'s Supplemental Reply* 10, Doc. 23. Defendant cites a recent case decided in the Northern District of West Virginia, where the district court judge found that claims under W. Va. Code § 46A-2-127 were expressly preempted under 12 C.F.R. § 34.4(a)(10). *Order Granting in Part & Den. in Part Defs.' Mot. for J. on Pleadings*, *Staats v. Bank of Am., N.A.*, C.A. No. 3:10-cv-68, at 21, (Nov. 4, 2010 N.D. W. Va.). In that case, the plaintiffs' claim under § 46A-2-127 was based on the defendant's communications "instructing them not to make payments toward their debt, while refusing to evaluate [them] for a loan modification and repeatedly representing that it would provide an affordable loan modification." *Id.* The substance of those communications are distinguishable from those in the instant case. In *Staats*, the plaintiffs were alleging a misrepresentation that directly related to the bank's loan servicing practices—whether or not to provide the plaintiffs with a loan modification. In contrast, the alleged misrepresentation in this case stems from a contract—the settlement agreement—between Plaintiff and Defendant.

Contrary to Defendant's assertions, Plaintiff's claims are not attempting to alter or change the manner in which Defendant exercises its powers under the NBA and OCC regulations. Instead, Plaintiff is attempting to enforce her rights under the settlement agreement reached in *Watkins I*. *See, e.g.*, *Padgett v. OneWest Bank, FSB*, 2010 U.S. Dist. LEXIS 38293, at *32–34 (N.D. W. Va. 2010) (finding that plaintiff's § 46A-2-127(d) claim was not preempted by HOLA as defendant's misrepresentation violated an Agreed Order between the parties in a bankruptcy proceeding). As this Court has stated before, § 46A-2-127(d) of the WVCCPA can be read to "essentially prohibit false misrepresentations used as a means to collect debt in violation of an underlying agreement." *Bishop v. Ocwen Loan Servicing, LLC*, 2010 U.S. Dist. LEXIS 111337, at *19 (S.D. W. Va. 2010).

Plaintiff's claim is not attacking the manner in which Defendant services its loans; rather, she is attacking the communication as it misrepresented Defendant's authority to collect on the loan in violation of the settlement agreement.  However, if Plaintiff's claim seeks to go outside the bounds of the settlement agreement, the Court agrees that the claim is preempted under the NBA and the OCC regulation.  Accordingly, the Court finds that insofar as Plaintiff's claim under § 46A-2-127(d) is grounded in the settlement agreement, it falls within those areas of state law exempted from preemption under § 34.4(b), and does not have more than an incidental affect on Defendant's real estate lending powers.

In sum, Plaintiff has successfully established a facially plausible claim under § 46A-2-127(d) of the WVCCPA.  Accordingly, Defendant's motion to dismiss Count II of the Amended Complaint is **DENIED.**

C.    <u>**Plaintiff's Claim is Not Judicially Estopped**</u>

Defendant also argues that the Amended Complaint as a whole should be dismissed, as Plaintiff is judicially estopped from asserting these claims because she has not disclosed the potential assets stemming from this action in her bankruptcy proceeding.[8][9]  "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to

---

[8] In a Chapter 7 bankruptcy proceeding, a debtor has an affirmative duty to disclose all assets; false disclosures may result in the denial of the debtor's right to discharge.  11 U.S.C. § 727(a)(4); *see, e.g.*, *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001).

[9] The Court takes judicial notice of the docket sheet, petition, discharge order, and schedules associated with Plaintiff's bankruptcy proceeding, *In re Watkins*, Case No. 07-30301 (Bankr. S.D. W. Va.).

-24-

protect the essential integrity of the judicial process." *Whitten v. Fred's, Inc.*, 601 F.2d 231, 241

(4th Cir. 2010) (quoting *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996)).  The Fourth Circuit

> generally require[s] the presence of the following elements: "First, the party sought
> to be estopped must be seeking to adopt a position that is inconsistent with a stance
> taken in prior litigation.  The position at issue must be one of fact as opposed to one
> of law or legal theory.  Second, the prior inconsistent position must have been
> accepted by the court.  Lastly, the party against whom judicial estoppel is to be
> applied must have intentionally misled the court to gain unfair advantage.  This bad
> faith requirement is the determinative factor."

*Id.* (quoting *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007)).  Judicial estoppel has been

applied in "civil law suit[s] brought by a plaintiff who concealed the existence of the legal claim

from creditors by omitting the lawsuit from his bankruptcy petition." *Id.*; *see also Hamilton v. State*

*Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001).

Defendant cites *Hamilton* as support for its argument.  In that case, the Ninth Circuit found

that a plaintiff was judicially estopped from bringing claims "about which he had knowledge, but

did not disclose, during his bankruptcy proceedings, and that a discharge of debt by a bankruptcy

court, under these circumstances, is sufficient acceptance to provide a basis for judicial estoppel .

. . ." *Hamilton*, 270 F.3d at 784.  The court found particularly relevant the fact the plaintiff "ha[d]

knowledge of enough facts to know that a potential cause of action exists during the pendency of

the bankruptcy, but fail[ed] to amend his schedules or disclosure statements to identify the cause of

action as a contingent asset." *Id.* (citations omitted).  *Hamilton* is inapposite.  The plaintiff in that

case had an obligation to disclose, as he knew prior to the discharge of his debts the possibility of

the claim.  In contrast, Plaintiff's current claims arose post-petition and post-discharge.

Plaintiff filed a voluntary Chapter 7 bankruptcy petition on August 16, 2007 in the Southern

District of West Virginia Bankruptcy Court. *Voluntary Pet.*, *In re Watkins*, Doc. 1.  Plaintiff was

granted a discharge on February 29, 2008, *Discharge Order*, *In re Watkins*, Doc. 45, but the case has not been closed as of this date, *see Docket Sheet*, *In re Watkins*.   Because the bankruptcy proceeding is not closed, Defendant argues Plaintiff's duty to disclose still exists.   However, this duty only applies to those assets that fall within property of the bankruptcy estate.   The "property of the estate includes '[a]ll legal or equitable interests of the debtor in the property *as of the commencement of the case*.'"   *In re Burgess*, 438 F.3d 493, 496 (5th Cir. 2006) (quoting 11 U.S.C. § 541(a)(1)).   There is, therefore, "a temporal limitation" to the property of the estate.   *Id.*   The allegations in the complaint before this Court are based on communications made by Defendant starting in February 2010 and Defendant's alleged breach of a contract created in February 2010. At the time Plaintiff filed her bankruptcy proceeding in 2007, there was no way she could have foreseen the possibility of this action.[10]   The current action is not an asset that is property of the bankruptcy estate.   Plaintiff was not under an obligation to disclose it in her bankruptcy proceedings and, therefore, she is not judicially estopped from pursuing her current claims.   Accordingly Defendant's motion to dismiss the Amended Complaint in its entirety is **DENIED**.

---

[10] Defendant attempts to argue that because the damages alleged in Plaintiff's current petition arise out of the settlement of Plaintiff's pre-petition claims, this action is a "contingent interest in future income" that is property of the bankruptcy estate.   *In re Marvel*, 372 B.R. 425, 430 (Bankr. N.D. Ind. 2007) (quoting *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993)).   Defendant bases this argument on case law analyzing whether money received post-petition is "sufficiently rooted in the pre-bankruptcy past."   *See, e.g.*, *Wu v. Towers*, 173 B.R. 411, 414 (B.A.P. 9th Cir. 1994) (quoting *In re Ryerson*, 739 F.2d 1423, 1426 (9th Cir. 1984)).   Those cases, however, are based on money received from tax returns or in payment for services rendered, which involved pre-petition conduct.   *See In re Marvel*, 372 B.R. 425; *Wu v. Towers*, 173 B.R. 411.   In comparison, the potential assets here arise out of Defendant's potential liability for its post-petition actions starting in February 2010.

### III.  CONCLUSION

For the foregoing reasons, Defendant's motion to consolidate and first motion to dismiss are **DENIED as moot**.  Defendant's second motion to dismiss is **GRANTED in part** and **DENIED in part**.  Count I of Plaintiff's Amended Complaint is **DISMISSED with prejudice**.  The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:          February 28, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE